IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PHILLIP M. BRANCH, SR.,

    Plaintiff,

      v.

SHIRLEY FRANKLIN, Mayor of
Atlanta, individually and in her official
capacity, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:06-CV-1853-TWT

## ORDER

This is a constitutional and statutory challenge to certain City of Atlanta municipal ordinances. It is before the Court on the Defendants' Motion to Dismiss [Doc. 8]. For the reasons set forth below, the Defendants' motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

The Plaintiff, Phillip M. Branch, Sr., is a taxicab driver holding a permit issued by the City of Atlanta. On June 23, 2006, he was cited for a violation of Atlanta City Code § 162-78(a)(2). This ordinance states that:

> In order to maintain a permit to drive a vehicle for hire, a driver must...Wear proper dress while providing or offering to provide "vehicle for hire services." As used herein, the term "proper dress" shall mean

the following: Shoes which cover the foot (no sandals); <u>pants to ankle length or a skirt or dress not shorter than knee length</u>; pants shall not be noticeably torn; shirts or blouses must have sleeves, and a collar; the term "shirts or blouses" does not include tee shirts; shirts are required to be tucked in; clothing shall not be visibly soiled.

Atlanta City Code § 162-78 (emphasis added).  The Plaintiff does not contest that he was wearing short pants at the time that the citation was issued.

Article II of the Atlanta City Code provides a comprehensive set of laws to regulate taxicab drivers.  It includes a grant of authority to Atlanta's mayor to appoint sixteen hearing panel officers to hear charges brought by the Bureau of Vehicles for Hire against any licensed cabdrivers.  Atlanta City Code § 162-29.  When a taxicab driver is cited for a violation of the code, the case is heard before a panel comprised of three of the appointed hearing officers.  Upon a finding of due cause by this hearing panel, Atlanta's chief of police has the authority to revoke or suspend the license of the offending taxicab driver.  Atlanta City Code § 162-84(a).  Alternatively, he may impose a fine of up to $1,000 for each violation.  Atlanta City Code § 162-84(d).

On July 6, 2006, following his citation, the Plaintiff went before a hearing panel.  This panel, which included Defendant Timothy J. Santelli, determined that the Plaintiff had violated the dress code ordinance and recommended that he be fined $25.00.  Atlanta Police Chief Richard J. Pennington followed this recommendation.

On August 8, 2006, the Plaintiff filed this action.  In his complaint, he

challenges the validity of the ordinance's dress code and the procedure by which he was found guilty for violating it.  Included among the Defendants are Santelli, the City of Atlanta Mayor Shirley Franklin, Atlanta Police Chief Pennington, and Director of Bureau of Taxicabs and Vehicles for Hire, Malachi S. Hull.  The Defendants have moved to dismiss these claims.

## II.  MOTION TO DISMISS STANDARD

A complaint should be dismissed under Rule 12(b)(6) only where it appears beyond doubt that no set of facts could support the plaintiff's claims for relief.  Fed. R. Civ. P. 12(b)(6); see Conley v. Gibson, 355 U.S. 41, 47 (1957); Linder v. Portocarrero, 963 F.2d 332 (11th Cir. 1992).  In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff.  See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983).  Generally, notice pleading is all that is required for a valid complaint.  See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986).  Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  Id.

## III. DISCUSSION

The Plaintiff brings section 1983 claims as well as related state law claims challenging both Atlanta City Code § 162-78 and the process by which he was prosecuted for violating it.[1]  Specifically, he claims that this ordinance violates: (1) his rights under the Equal Protection, Due Process and Privileges and Immunities Clauses of the Fourteenth Amendment; and (2) O.C.G.A. §§ 43-1A-2, 43-1A-6, and 36-35-3. He further alleges that during this administrative hearing, the city should have afforded him a lawyer, allowed him to make legal arguments, and given him the

_____

[1]The Defendants assert that the Plaintiff cannot bring a section 1983 action for deprivation of a property right because adequate remedies existed at state law to redress this grievance.  (Defs.' Mot. to Dis., at 6.)  Specifically, they claim that he should have filed a writ of certiorari as provided in Atlanta City Code § 162-29(c). In support of their contention, they cite Parratt v. Taylor, 451 U.S. 527 (1981), in which the Supreme Court stated: "[T]he existence of an adequate state remedy to redress property damage inflicted by state officers avoids the conclusion that there has been any constitutional deprivation of property without due process of law within the meaning of the Fourteenth Amendment."  However, Parratt involved an instance where mail delivery to a state prisoner was lost as the result of negligence on the part of prison officials.  The deprivation in that case thus resulted from an unauthorized state action, for which there could have been no pre-deprivation hearing.  The Court does not find Parratt to apply here.  As Justice Stevens noted in a concurring opinion in Hudson v. Palmer, 468 U.S. 517, 542 (1984), "I do not understand the Court's holding [in Parratt] to apply to conduct that violates a substantive constitutional right-actions governmental officials may not take no matter what procedural protections accompany them."  See also Madden v. City of Meriden, 602 F. Supp. 1160, 1169 (D. Conn. 1985) ("Parratt should be properly limited to those situations in which the deprivation occurs as the result of a random or unauthorized act which precludes the availability of a predeprivation remedy.").  The imposition of the $25.00 fine was not a random or unauthorized act.  The Defendants' characterization of the fine as deprivation of property misses the mark.

opportunity to have his case heard in a court before a judge. He thus claims that this hearing violated his rights under various federal and state law provisions. The Court will address these federal and state claims separately.

    A. <u>Federal Claims</u>

        1. <u>Equal Protection</u>

The Fourteenth Amendment of the United States Constitution prohibits a state from denying "any person within its jurisdiction the equal protection of the laws." The Plaintiff alleges that Atlanta City Code § 162-78 violates this provision in several ways. He argues first that this law discriminates against him as a male and as a heterosexual.[2] He further alleges that it discriminates against him as a taxicab driver because: (1) the City of Atlanta does not regulate the dress of other professions in the same way–specifically police officers who are allowed to wear short pants; and (2) taxicab drivers are subjected to "illegal administrative hearings" for violations of this

---

    [2]In his complaint, the Plaintiff alleges only that discriminating against him as a heterosexual was a violation of his rights under the Privileges and Immunities Clause. It was not until his response that he also claimed this discrimination violated the Equal Protection Clause. However, under the liberal pleading standards applied to *pro se* litigants, the Court will construe the pleadings as including this claim. <u>See</u> <u>Trawinski v. United Techs.</u>, 313 F.3d 1295, 1297 (11th Cir. 2002) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."); <u>S.E.C. v. Elliott</u>, 953 F.2d 1560, 1582 (11th Cir. 1992) ("When interpreting the pro se papers, the Court should use common sense to determine what relief the party desires.")

ordinance while other motorists are permitted to have their citations adjudicated in municipal court.

Addressing first these latter claims regarding alleged discrimination against taxicab drivers, the Plaintiff has misinterpreted the nature of the protection provided by the Equal Protection Clause.  As stated by the Supreme Court: "[M]ost laws differentiate in some fashion between classes of persons.  The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike."  Nordlinger v. Hahn, 505 U.S. 1, 10 (1992); see also Thigpen v. Bibb County, Ga., Sheriff's Dept., 223 F.3d 1231, 1237 (11th Cir. 2000) ("[T]o properly plead an equal protection claim, a plaintiff need only allege that through state action, similarly situated persons have been treated disparately."), abrogated on other grounds by National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002).  To qualify as similarly situated, however, the comparison group or individual must be "prima facie identical in all relevant respects."  Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1314 (11th Cir. 2006).  Here, that is clearly not the case.  Indeed, the differences between taxicab drivers and these other groups are stark and numerous.  As one relevant example, police officers are often required to spend much of their shift outdoors, whereas taxicab drivers spend the majority of their time in vehicles required by law to have

properly functioning air conditioning.  <u>See</u> Atlanta City Code § 162-34(c)(2)(B).
Other motorists are also distinct, as they are members of the public at large and are not
operating their vehicles as licensed taxicab drivers in the City of Atlanta.  With the
taxicab license comes certain restrictions regarding its use, and it is neither surprising
nor illegal that taxicab drivers would be subject to distinct, and potentially stricter,
regulations when operating their vehicles.  The Court thus finds that these two groups
are not similarly situated with taxicab drivers.  Accordingly, the Plaintiff cannot
maintain an equal protection claim based on any alleged distinctions between these
groups and his own.

The Plaintiff also claims that this dress code subjects him to discrimination as
a male because it permits taxicab drivers to wear short skirts or dresses but does not
allow short pants.  In essence, he contends that while women can wear items of
clothing that come down only to knee length, men are not provided with a comparable
clothing option.  In assessing the constitutionality of a law under the Equal Protection
Clause, the Court must first determine what level of scrutiny to apply in its
examination.  The Supreme Court has recognized that certain forms of gender
discrimination require heightened scrutiny, mandating that the classification be
substantially related to a legitimate government purpose. <u>See</u> <u>Craig v. Boren</u>, 429 U.S.
190, 197 (1976).  Such scrutiny is not required, however, and a recent Second Circuit

opinion provides instruction on this point.  In <u>Zalewska v. County of Sullivan, New York</u>, 316 F.3d 314, 323 (2d Cir. 2003), a female county van driver challenged a municipal transit authority dress code mandating that all its employees wear pants. She argued, inter alia, that the ordinance violated her equal protection rights by forcing her to dress more masculinely.  The court found that this ordinance was subject to only rational basis scrutiny, reasoning that the county's policy was not "the kind of purposeful discrimination that would trigger the equal protection clause." <u>Id.</u> (citing <u>Personnel Admin. of Mass. v. Feeney</u>, 442 U.S. 256, 274 (1979)).  While conceding that this law would affect women more than men, the Second Circuit did not find this "incidental burden" alone to be enough to justify heightened scrutiny. <u>Id.</u>

Similarly here, the Plaintiff has failed to allege that this ordinance is the result of purposeful discrimination against males.  Indeed, the dress code makes no mention of gender.  The Court agrees, however, with the Plaintiff's contention that this law affects men disproportionately by not allowing them a knee length clothing option. The City of Atlanta must thus demonstrate that this law is rationally related to a legitimate government interest.  Usually, this level of scrutiny is not a particularly burdensome standard for the government to meet.  <u>See</u> <u>Romer v. Evans</u>, 517 U.S. 620, 632 (1996) ("In the ordinary case, a law will be sustained if it can be said to advance

a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous."). The Defendants in their motion relied exclusively upon the availability of a post deprivation remedy in seeking dismissal of the Plaintiff's equal protection claim. They have not put forth any legitimate government interest that is advanced by the dress code.  For this reason, dismissal of the equal protection claim at this time is unwarranted.

### 2. Privileges and Immunities Clause

The Plaintiff alleges several violations of the Fourteenth Amendment's Privileges and Immunities Clause.  The Amendment states in relevant part, "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States."  Specifically, he claims that his rights have been violated by this ordinance because: (1) he has the right to protect himself against the heat while working as a taxicab driver by wearing short pants; and (2) he has been denied the privilege of pursuing self employment "without having to deal with government regulations that are communist in nature, oppressive, arbitrary, and capricious."  (Compl., ¶ 23.)  The Privileges and Immunities Clause, however, "has no application to a citizen of the State whose laws are complained of."  Wang v. Pataki, 396 F. Supp. 2d 446, 459 (S.D. N.Y. 2005) (quoting Bradwell v. Illinois, 83

U.S. (16 Wall.) 130, 138 (1872)); see also United Bldg. & Const. Trades Council v. Mayor & Council of Camden, 465 U.S. 208, 217 (1984) (acknowledging that New Jersey residents have no claim under the Privileges and Immunities Clause against a city ordinance) (citing Slaughter-House Cases, 83 U.S. (16 Wall.) 36, 72 (1872)).  As a Georgia resident, the Plaintiff thus cannot maintain these claims against the City of Atlanta.

### 3. Sixth Amendment

The Plaintiff also makes several claims under the Sixth Amendment based on the City's failure to afford him a lawyer and permit him to make legal arguments in a court of law.  The Supreme Court has made clear, however, that "[t]he protections provided by the Sixth Amendment are explicitly confined to 'criminal prosecutions.'" Austin v. United States, 509 U.S. 602, 608 (1993) (citing United States v. Ward, 448 U.S. 242, 248 (1980)).  Atlanta City Code § 162-29(e) states that hearings such as the one at issue here are "administrative in nature."  He thus can make no claim under the Sixth Amendment.  This claim should be dismissed.

### 4. Conspiracy and Extortion

The Plaintiff argues that by (1) conspiring to violate his rights and (2) extorting money from him by holding his taxicab permit on the condition that he pay a fine,  the Defendants violated 18 U.S.C. §§ 241 and 1951 respectively.  Both of these statutes

are criminal provisions, however, and provide for no private right of action. See, e.g.,

Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989) ("Only the United States as prosecutor

can bring a complaint under 18 U.S.C. §§ 241-242 ... These statutes do not give rise

to a civil action for damages."); Wisdom v. First Midwest Bank, of Poplar Bluff, 167

F.3d 402, 409 (8th Cir. 1999) ("We agree that neither the statutory language of 18

U.S.C. § 1951 nor its legislative history reflect an intent by Congress to create a

private right of action.").  Accordingly, these claims must be dismissed.

     5. Due Process

       a. Fourteenth Amendment

The Plaintiff contends that the administrative hearing violated his Due Process

rights because he was not afforded a lawyer and was not permitted to make legal

arguments in a "real courtroom" before a "real judge." (Compl., ¶¶ 24-26.) Normally,

to determine whether a due process right has been violated, a court must first assess

whether the injury claimed is within the scope of the Due Process Clause.  Kirby v.

Siegelman, 195 F.3d 1285, 1290 (11th Cir. 1999).  Once the Court determines that the

Due Process Clause applies, the question then becomes "what process is due."

Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985).

Here, the Court will assume arguendo that the Plaintiff had a liberty interest in

being able to wear short pants.  The Supreme Court has made clear that "something

less than a full evidentiary hearing is sufficient prior to adverse administrative action." Loudermill, 470 U.S. at 545 (quoting Mathews v. Eldridge, 424 U.S. 319, 343 (1976)).  Indeed, "[t]he essential requirements of due process...are notice and an opportunity to respond.  The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement."  Id. at 546.  In Loudermill, a tenured school employee, who was terminated without a hearing, argued that his due process rights had been violated. The Supreme Court agreed, determining that to meet the requirements of due process, a tenured public employee was entitled to the following: (1) oral or written notice of the charges; (2) an explanation of the employer's evidence; and (3) an opportunity for the employee to present his side of the story.  Id.  Here, the Plaintiff does not contend, nor is there any evidence, that he was not provided with at least this much.  If this is all the process that the Supreme Court requires before a tenured public employee can be terminated, *afortiori*, it is certainly enough to justify the imposition of a $25.00 fine against a city taxicab driver for violating the City's dress code.  The Plaintiff's claim is thus without merit.

The Plaintiff also alleges that the Defendants violated his substantive due process rights.[3] Section 1 of the Fourteenth Amendment provides in relevant part that: "No State shall . . . deprive any person of life, liberty, or property, without due process of law." As stated by the Supreme Court, "[t]his section affords not only a procedural guarantee against the deprivation of 'liberty,' but likewise protects substantive aspects of liberty against unconstitutional restrictions by the State." Kelley v. Johnson, 425 U.S. 238, 244 (1976). The Eleventh Circuit has recognized, moreover, that individuals have a protected interest in their personal dress. See DeWeese v. Town of Palm Beach, 812 F.2d 1365, 1367 (11th Cir. 1987). In DeWeese, a plaintiff successfully challenged a Palm Beach city ordinance making it unlawful for him to run without a shirt on. The court made clear, however, that only a rational basis need be demonstrated between the at-issue law and a legitimate government concern in regulating this liberty interest. Id. Furthermore, in order to have this law struck down, the Plaintiff has the burden of demonstrating that the ordinance is arbitrary and irrational. Id.

---

[3]This claim is also not made clear until by the Plaintiff until his response to the motion to dismiss. Again, however, the Court will liberally construe his pleadings. See Trawinski v. United Techs., 313 F.3d 1295, 1297 (11th Cir. 2002); S.E.C. v. Elliott, 953 F.2d 1560, 1582 (11th Cir. 1992).

Despite the difficulty of the road ahead for the Plaintiff, the Court does not find that the Defendants' motion should be automatically granted. Indeed, in order to deny a motion for dismissal, the Court need only determine that some set of facts could support a claim that this ordinance is arbitrary and capricious. Even though the burden ultimately lies with the Plaintiff, the Defendants must come forward with some legitimate government interest in regulating the dress of their taxicab drivers. Because the Defendants have, as of yet, not done that, their motion must be denied.

### b. 5 U.S.C. § 555

The Plaintiff also alleges that his due process rights under 5 U.S.C. § 555(b) were violated because the Defendants did not "afford a lawyer" for him. This statute has no application to this administrative proceeding. By its clear language, it applies to any person compelled to appear before an "agency." Section 551 explicitly defines the term "agency"– for the purposes of the subchapter – as an "authority of the Government of the United States." 5 U.S.C. § 551; see Davidson v. State of Ga., 622 F.2d 895, 897 (5th Cir. 1980) (stating that 5 U.S.C. §§ 551 and 552 had no application to state government); Lathrop v. Juneau & Assocs., Inc. P.C., 220 F.R.D. 330, 336 (S.D. Ill. 2004) (applying same reasoning to exclude city government and its employees). Dismissal of this claim is appropriate.

B. <u>State Law Claims</u>

    1. <u>Access to Court Under the Georgia Constitution</u>

The Plaintiff asserts that the Defendants' failure to allow him access to a "real courtroom" and "real judge" violates his rights under Article 6, Section 1, Paragraph 1 of the Georgia Constitution.  This provision has no application here, however, as it explicitly relates only to the judicial branch and the power vested in that branch.  It exempts from its scope administrative agencies.  As expressly stated in the Atlanta City Code, the hearing at issue in the instant case was "administrative in nature." Atlanta City Code § 162-29(e).  Dismissal of this claim is merited.

    2. <u>Due Process Under O.C.G.A. §§ 36-32-1(f) and 50-13-13(3)</u>

The Plaintiff contends that his due process rights under Georgia law have been violated by the City's failure to provide him with a lawyer.  (Compl., ¶ 24.)  These claims are without merit.  First, neither of the statutes he cites, O.C.G.A. §§ 36-32-1(f) and 50-13-13(3), applies to an administrative hearing established through a city ordinance.  O.C.G.A. § 36-32-1(f) applies only to municipal courts, before which the Plaintiff clearly was not.  O.C.G.A. § 50-13-13, a part of the Georgia Administrative Procedures Act ("the Act"), applies only to state agencies.  <u>See</u> <u>LaFave v. City of Atlanta</u>, 258 Ga. 631, 632 (1988).  In <u>Lafave</u>, a civic association claimed that their due process rights had been violated under the Act because they had not been allowed

meaningful participation in Board of Zoning Appeals hearing.  The Georgia Supreme Court determined, however, that the Act did not apply to the Board of Zoning, which was a "creature" of the City of Atlanta.  Similarly here, the Act's provisions have no application to a hearing governed by local law.

Second, even assuming arguendo that either of these laws did apply, they do not provide the relief the Plaintiff seeks.  He claims that his due process rights were violated because he was not afforded an attorney.  The laws merely provide individuals with the "opportunity" to be represented by legal counsel.  This language does not mandate that an agency pay for that attorney.

### 3. Other State Law Claims

The Plaintiff also alleges violations of several other state law provisions.  First, he brings challenges under O.C.G.A. §§ 43-1A-2[4] and 43-1A-6.[5]  These provisions of

---

[4]This law states, in pertinent part, that the chapter's purpose is "to ensure that no programs of licensure and certification shall hereafter be imposed upon any profession or business unless required for the safety and well-being of the citizens of the state."  O.C.G.A. § 43-1A-2.

[5]This statute provides the factors to be considered in determining whether to regulate business, including:
> (1) Whether the unregulated practice of an occupation may harm or endanger the health, safety, and welfare of citizens of the state and whether the potential for harm is recognizable and not remote;
> (2) Whether the practice of an occupation requires specialized skill or training and whether the public needs and will benefit by assurances of initial and continuing occupational ability;

Title 43 of the Georgia Code, however, are directed towards the Georgia Legislature's regulation of license and certification requirements for "Professions and Businesses" in the state.  Importantly, taxicab drivers are not among the regulated professions listed under this title.  Moreover, these laws do not dictate whether a city can place any regulations or certification requirements on this profession.  Indeed, the language in these statutes has no application at all to the Atlanta City Code.

The Plaintiff also challenges this ordinance under O.C.G.A § 36-35-3.  This law provides municipalities in Georgia with "the legislative power to adopt clearly reasonable ordinances, resolutions, or regulations relating to its property, affairs, and local government for which no provision has been made by general law and which are not inconsistent with the Constitution or any charter provision applicable thereto."  Thus, the City of Atlanta can reasonably regulate taxicab drivers operating within its city limits in any way that is not in conflict with state law.  The Court finds that enforcing a dress code fits within the parameters of this authority.  Accordingly, the Plaintiff's challenges under state law are without merit and should be dismissed.

---

(3) Whether the citizens of this state are or may be effectively protected by other means; and
(4) Whether the overall cost effectiveness and economic impact would be positive for citizens of the state.

O.C.G.A. § 43-1A-6.

C. <u>Individual Defendants</u>

As discussed above, all that properly remains of the Plaintiff's bevy of claims are allegations that the Defendants violated the Plaintiff's rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment.  The Plaintiff has filed these claims against each of the individual Defendants in both their official and individual capacities.  However, "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985).  Accordingly, because the City of Atlanta has been included in this lawsuit, official capacity claims against the individual Defendants are redundant.  The Court thus dismisses all the claims against the individual Defendants in their official capacities.

As to the individual capacity claims, the Court finds that the individual Defendants are protected by qualified immunity.  "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Kingsland v. City of Miami</u>, 382 F.3d 1220, 1231 (11th Cir. 2004) (citations and punctuation omitted).  This analysis consists of two steps.  "[T]he public official must first prove that he was acting within the scope

of his discretionary authority when the allegedly wrongful acts occurred." Id. at 1232 (quotation omitted).  The burden then shifts to the plaintiff to show that qualified immunity is not appropriate because (1) the public official violated a constitutional right (2) that was clearly established.  Id. (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).

Here, according to the Plaintiff's allegations, the only Defendant who played any role in the alleged violation is Timothy Santelli, the hearing panel officer.  The Court has already determined, however, that the procedural due process provided through the hearing was sufficient.  Indeed, there is no allegation that Santelli's actions during that hearing were in any way outside the scope of his discretionary authority.  The Plaintiff claims only that the hearing itself was illegal. Because the Plaintiff's only surviving constitutional claims concern the constitutionality of Atlanta City Code § 162-78, the Court must next ask whether an objectively reasonable hearing officer would have thought that Santelli's conduct in enforcing this ordinance was unlawful.  Vaughan v. Cox, 343 F.3d 1323, 1332 (11th Cir. 2003).  "The 'salient question'... is whether the state of the law gave the defendants 'fair warning' that their alleged conduct was unconstitutional." Id. (quoting Hope v. Pelzer, 536 U.S. 730, 741 (2002)); see also Knoeffler v. Town of Mamakating, 87 F. Supp. 2d 322, 329 (S.D.N.Y. 2000) (finding that a city official was entitled to qualified immunity if it

was objectively reasonable for him to believe that he could enforce a city ordinance against the plaintiff).  In the Eleventh Circuit, <u>DeWeese</u> is the only case identified by this Court that addresses whether a municipality's dress code could violate an individual's Equal Protection or Substantive Due Process rights.  <u>DeWeese</u>, 812 F.2d at 1365.  As clearly stated in that case, to justify such an ordinance, a municipality need only show that the law is rationally related to a legitimate government interest. <u>Id.</u> at 1367.  Moreover, the liberty interest in that case was more profound than the one here, given that Palm Beach's law regulated the dress of the public at large, rather than just professional taxicab drivers licensed by the city.  <u>See</u> <u>Zalewska v. County of Sullivan, New York</u>, 316 F.3d 314, 321 (2d Cir. 2003) ("[C]ourts have found greatly significant the distinction between regulating public employees and regulating members of the public at large.").  Under these circumstances, the Court finds that it was reasonable for Santelli to think that this law was constitutional and thus enforceable.

The other individual Defendants–Atlanta Mayor Shirley Franklin, Atlanta Police Chief Pennington, and Director of Bureau of Taxicabs and Vehicles for Hire Hull–are similarly protected by qualified immunity.  The Plaintiff contends only that because they are responsible for everyone under them, they should have known that this administrative hearing was illegal.  Supervisory officials are not liable, however,

for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. Miller v. King, 384 F.3d 1248, 1261 (11th Cir. 2004); Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999). Supervisory liability is imposed either "when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." Miller, 384 F.3d at 1261 (internal marks omitted). Otherwise, the supervisor is entitled to qualified immunity. See Hartley, 193 F.3d at 1268. Here, there is no allegation that any of these Defendants participated in the enforcement of this statute against the Plaintiff, nor of any causal connection between their actions and those of the hearing panel. Indeed, if Santelli cannot be held liable for his actions, neither can any of these other Defendants for their alleged supervisory role. Accordingly, qualified immunity applies and all the individual Defendants must be dismissed from this lawsuit.

## IV. CONCLUSION

For the reasons set forth above, the Defendants' Motion to Dismiss [Doc. 8] is GRANTED in part and DENIED in part as to the City of Atlanta. The claims against Defendants Shirley Franklin, Richard J. Pennington, Malachi S. Hull, and Timothy J. Santelli are dismissed in their entirety.

SO ORDERED, this 14 day of November, 2006.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge